# THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **MELISSA CONRAD**, | : | |
| | : | |
| Plaintiff, | : | **CASE NO. 2:21-cv-1856** |
| | : | |
| v. | : | **JUDGE** |
| | : | |
| **WALLICK PROPERTIES MIDWEST LLC**, | : | **MAGISTRATE JUDGE** |
| c/o Registered Agent Solutions, Inc. | : | **JURY DEMAND ENDORSED HEREON** |
| 4568 Mayfield Road, Suite 204 | : | |
| Cleveland, OH 44121 | : | |
| | : | |
| Defendant. | : | |

### PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

Now comes Plaintiff Melissa Conrad ("Plaintiff" or "Conrad") for her complaint against Defendant Wallick Properties Midwest LLC ("Defendant" or "Wallick") for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§2601, *et seq.*, who, based on personal knowledge as to her own conduct and made on information and belief as to the acts of others, hereby states as follows:

**I.      JURISDICTION AND VENUE**

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FMLA. Plaintiff brings this action to obtain relief provided in the FMLA as a result of retaliation and interference, which has resulted in loss of wages, compensation, and benefits.

2.      Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Plaintiff entered into an employment relationship with Defendant in Madison County, Ohio, which is in the Southern District of Ohio; a substantial part of the events or omission giving rise to the claim

occurred in the Southern District of Ohio; and Defendant has conducted substantial business in the Southern District of Ohio, to wit, at 160 West Main Street, Suite 200, New Albany, Ohio 43054.

## II.     PARTIES

3.      Plaintiff is an individual and resident of the Southern District of Ohio Ohio. Plaintiff brings this action to redress injuries committed against her as a result of Defendant's actions.

4.      At all times relevant herein, Plaintiff was an "eligible employee" as defined in the FMLA in that she was employed by Defendant for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before she sought FMLA leave from Defendant.

5.      Defendant is a domestic limited liability company authorized to do business in Ohio, conducts business in the Southern District of Ohio, and has its principal place of business in the Southern District of Ohio.

6.      During relevant times, Defendant maintained control, oversight, and direction over Plaintiff, including the promulgation and enforcement of policies affecting FMLA medical leave and other matters relevant to this action.

7.      At all times material herein, Defendant was an "employer" of Plaintiff as is defined by the FMLA.

## III.    STATEMENT OF FACTS

8.      Plaintiff was employed by Defendant as a property manager from approximately February 2017 until December 2020.

9.      On or about March 12, 2020, Plaintiff informed Defendant that she was pregnant and requested information on maternity leave.

10. Defendant informed Plaintiff that it does not have a formal maternity leave policy and that she would need to use FMLA medical leave for any time off. Defendant further informed Plaintiff that her job would be protected under the FMLA.

11. On or about March 20, 2020, all of Defendant's property managers, including Plaintiff, were advised to download software in preparation for working from home due to the COVID-19 pandemic and shutdowns.

12. On or about March 23, 2020, Defendant instructed its property managers to return to work on premises.

13. On or about March 23, 2020, Plaintiff requested that she be permitted to work from home because of being at a higher risk for contracting COVID-19 due to her pregnancy, age, and underlying health conditions.

14. On or about March 31, 2020, Defendant approved Plaintiff's request to work from home, which commenced April 1, 2020.

15. On or about April 6, 2020, Plaintiff was approved for intermittent FMLA medical leave due to her high-risk pregnancy (i.e., she was high-risk for contracting COVID-19) as well as continuous FMLA medical leave following the birth of her child.

16. On or about September 16, 2020, Plaintiff gave birth to her child and then notified Defendant that she was beginning her continuous FMLA leave.

17. Thereafter, on or about October 1, 2020, Plaintiff began working from home on an intermittent basis with the approval of her general manager. Specifically, the general manager informed Plaintiff that she could work from home when she was able to do so, that those hours would not count against her FMLA leave, and that she did not have a minimum number of hours each week.

18. Plaintiff worked from home intermittently throughout October 2020 and November 2020 while she was on FMLA leave.

19. Defendant questioned Plaintiff about her return from FMLA medical leave on multiple occasions, including on September 28, 2020, which was fewer than two (2) weeks after Plaintiff gave birth to her child; on October 13, 2020 by employees including Plaintiff's General Manager, Mr. Charlie Stenner, and Defendant's HR representative, Ms. Joyce Peoples; and on November 2, 2020 from Mr. Stenner asking Plaintiff if she would be returning "roughly 15 November."

20. When Plaintiff's FMLA medical leave was extended on November 5, 2020 for the full twelve (12) weeks due to the increased medical risks associated with COVID-19 and breastfeeding, Defendant's Regional Manager, Mr. Russell Underwood, and Defendant's owner, Ms. Lynn Dalton, began messaging and calling Plaintiff regarding her FMLA medical extensions. Thereafter, the tone from Defendant's representatives in subsequent communications drastically changed, and, consequently, Plaintiff was frequently questioned about her FMLA extension.

21. On November 24, 2020, Plaintiff had a conference with HR representative Ms. Peoples about her return to work; however, when Plaintiff stated she needed the time off because of the concerns from working in a small office with the risks of COVID-19, Ms. Peoples quickly interjected and said, "Oh, so you are resigning?," to which Plaintiff stated, "No," and Ms. Peoples responded, "Well that's what it sounds like, it sounds like you are resigning your position."

22. On or about December 4, 2020, Defendant informed Plaintiff that she was no longer allowed to work from home while on FMLA leave and that she either had to finish out the remainder of her FMLA leave or come back to the office to work.

23. On or about December 7, 2020, Plaintiff asked Defendant how many hours of FMLA leave she still had available.

24. On or about December 15, 2020, Defendant's HR representative emailed Plaintiff to inform her that it was still calculating her remaining FMLA leave.

25. On or about December 17, 2020, Plaintiff informed Defendant of her health concerns of working in the facility where multiple people had already contracted COVID-19 and asked if there were any other options that would allow her to continue working remotely from home, as she had been doing since April 2020, or if there were any other positions available that would allow her to work from home, such as Plaintiff's previous position as a leasing agent.

26. At no point did Plaintiff state that she would not return to work at the Pleasant Valley Colony and Pleasant Valley Gardens location.

27. On or about December 28, 2020, Plaintiff asked Defendant if it had completed calculating her remaining FMLA leave, to which Defendant replied they were still calculating the amount of FMLA time remaining.

28. On or about December 29, 2020, Plaintiff asked Defendant again if it had completed calculating her remaining FMLA leave.

29. On or about January 1, 2021, Plaintiff requested that Defendant provided her with the Policy and Procedures for FMLA so she could determine how many hours of FMLA leave she had remaining because Defendant was not providing her with this information.

30. On or about January 4, 2021, Plaintiff received an email from Defendant's HR representative requesting to schedule a team call on January 5, 2021.

31. On January 5, 2021, Plaintiff was informed by Defendant that she had approximately ten (10) days of FMLA leave remaining, that her position at Pleasant Valley Colony

and Pleasant Valley Gardens was being terminated because Plaintiff "caused a hardship to the community," and that Plaintiff was being transferred to another location but it did not know which location.

32. On January 12, 2021, Plaintiff asked Defendant which location she was being transferred to because she had not yet been given this information.

33. On January 14, 2021, Defendant notified Plaintiff via a transfer letter that Plaintiff was to report to work on January 18, 2021 at the Helen Evans community in Marysville, Ohio.

34. January 18, 2021 was a paid holiday, so Plaintiff did not report to work that day.

35. Upon information and belief, Plaintiff's FMLA leave exhausted on or about January 18, 2021.

36. On January 19, 2021, Plaintiff spoke with Defendant's Assistant Regional Vice President, Ms. Whitney Cooperrider, and informed Ms. Cooperrider that the Helen Evans community was substantially farther away from her home and her children's school, unlike her previous location which was one (1) minute from her home. Plaintiff also asked what she did to cause a hardship in her previous community.

37. Defendant stated that it had used a poor choice of words but terminated Plaintiff from that community because she was not working in the office.

38. Despite Defendant informing Plaintiff that her position had been terminated, Defendant did not terminate Plaintiff's position as a property manager and instead filled her position with another employee.

39. Plaintiff never said that she would not work in-office at Pleasant Valley Colony and Pleasant Valley Gardens. Plaintiff explained that she would work in-office and would even do so

as a leasing agent, which was Plaintiff's position before she became the Property Manager. Ms. Cooperrider forwarded Plaintiff's questions to HR.

40. On January 21, 2021, Ms. Cooperrider asked Plaintiff to return her computer and other office equipment to the Pleasant Valley Colony and Pleasant Valley Gardens locations, which Plaintiff did. Plaintiff emailed Ms. Cooperrider to confirm that she returned the equipment and asked if HR had responded to her questions.

41. On January 22, 2021, Mr. Alan Knox, Defendant's Associate Relations Specialist, sent Plaintiff a letter stating that Plaintiff could either report to the Helen Evans location as the Property Manager or the Pleasant Valley Colony and Pleasant Valley Gardens location as a leasing agent.

42. Later that same day, Mr. Knox sent Plaintiff a revised letter stating that she was not offered the leasing agent position at Pleasant Valley Colony and Pleasant Valley Gardens and instead needed to report to Helen Evans on January 25, 2021.

43. Plaintiff submitted a vacation request, with the approval of Ms. Copperrider, for January 19, 2021 to January 26, 2021. Ms. Copperrider directed Plaintiff to revise the vacation request in Dayforce, the software Defendant utilized, to reflect an altered vacation request of January 19, 2021 to January 25, 2021; however, the system would not allow Plaintiff to revise the vacation request because it had already been approved.

44. On January 25, 2021, Plaintiff received a termination of employment letter from Defendant.

45. Plaintiff immediately informed Defendant that she had an approved vacation day for that day, to which Defendant never responded.

46. Defendant discriminated or retaliated against Plaintiff for exercising her FMLA rights by allegedly terminating Plaintiff's position as Property Manager, attempting to transfer Plaintiff to a location that was much farther away, failing to place Plaintiff in a lesser position of leasing agent at her previous location, and ultimately terminating Plaintiff's employment.

47. Defendant even stated it terminated Plaintiff's employment because of the alleged hardship Plaintiff's FMLA leave caused Defendant, particularly, Plaintiff's extension of FMLA medical leave for the full twelve (12) weeks she was entitled to under the FMLA.

## IV. CAUSE OF ACTION

**CAUSE OF ACTION:**
**29 U.S.C. §§ 2615, *et seq.* – FMLA Interference with Rights and Retaliation**

48. All of the preceding paragraphs are realleged as if fully rewritten herein.

49. At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

50. At all times relevant, Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

51. Plaintiff's request for, and use of, FMLA leave beginning on or around September 16, 2020 and ending January 18, 2021 was for the birth of her child and in order to care for such child as set forth in 29 U.S.C. § 2612(a)(1)(A).

52. During Plaintiff's FMLA leave, Defendant purportedly terminated her position as Property Manager at the Pleasant Valley Colony and Pleasant Valley Gardens location because Plaintiff's FMLA medical leave had "caused a hardship to the community."

53. Defendant did not actually terminate the Property Manager position at the Pleasant Valley Colony and Pleasant Valley Gardens location; rather, Defendant filled this position with another employee.

54. Defendant had an open leasing agent position available at the Pleasant Valley Colony and Pleasant Valley Gardens location, which Defendant offered to Plaintiff and then rescinded the offer the same day.

55. Defendant transferred Plaintiff to the Helen Evans location farther away and in a different town; however, the day before Plaintiff was to return from FMLA leave and her approved vacation, Defendant terminated Plaintiff's employment.

56. Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave. An employer is also prohibited from discriminating or retaliating against an employee who exercises a right under the FMLA. *See* 29 U.S.C. § 2615(a)(2).

57. Defendant has willfully and/or recklessly retaliated against, interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA by (1) terminating Plaintiff in retaliation for exercising her rights to use FMLA medical leave; (2) transferring Plaintiff to a different facility in retaliation for exercising her rights to use FMLA medical leave; and/or (3) refusing to restore Plaintiff to the same job or to an equivalent job.

58. As a result of Defendant's interference and retaliation, Plaintiff was harmed in the fact that she was unlawfully terminated while exercising her FMLA rights, denied benefits to which she is entitled under the FMLA, and not restored to her prior job or an equivalent job.

59. Defendant lacked good faith to believe it had not violated the FMLA with its actions.

60. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in

endeavoring to protect herself from Defendant, comprised of costs and attorneys' fees in accordance with 29 U.S.C. § 2617(a).

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands back pay and benefits, front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, liquidated damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and all other relief the Court deems just and appropriate.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (100041)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
         agedling@mcoffmanlegal.com
         khendren@mcoffmanlegal.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)